SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**In the Matter of Mark G. Legato, an Attorney at Law (D-99-15) (077464)**
**In the Matter of Regan C. Kenyon, Jr., an Attorney at Law (D-100-15) (077465)**
**In the Matter of Alexander D. Walter, an Attorney at Law (D-101-15) (077467)**

**Argued June 21, 2016 -- Decided May 24, 2017**

**TIMPONE, J., writing for the Court.**

In these matters, the Court considers the discipline to be imposed on attorneys, with no previous disciplinary history, who pled guilty to sex offenses in which their intended victims were children ranging in ages from nine to twelve. Under Rule 1:20-13(c)(1), the respondents' convictions constitute conclusive evidence of their criminal conduct, as well as a violation of Rule of Professional Conduct 8.4(b), which proscribes commission of "a criminal act that reflects adversely on lawyer's honesty, trustworthiness, or fitness as a lawyer." The only task before the Court is to determine the appropriate discipline for each respondent's ethical violations. The Office of Attorney Ethics (OAE) and the Disciplinary Review Board (DRB) recommended that the Court disbar each respondent.

Respondents Mark G. Legato and Regan C. Kenyon, Jr., each pled guilty to third-degree attempted endangering the welfare of a child. Legato admitted that he engaged in explicit online conversations with a person he believed to be a twelve-year-old girl. He also admitted to scheduling two in-person meetings with the girl, but did not appear at either. Unbeknownst to Legato, the girl was actually an undercover law enforcement officer. Following Legato's guilty plea, the OAE filed a motion for final discipline before the DRB. In a unanimous decision, the DRB voted for his disbarment.

Respondent Kenyon admitted that over the course of approximately four months, he engaged in online conversations with a person he believed to be a fourteen-year-old girl. He sent her images of, and links to, hardcore adult pornography and arranged to meet the girl, but did not appear for the meeting. Kenyon was unaware that he was in fact communicating with an undercover law enforcement officer. Kenyon maintains that his conduct was the result of his addiction to pornography, for which he began treatment six days after his arrest. In a majority decision, the DRB voted to disbar Kenyon. Three members dissented, recommending instead an indeterminate suspension. In a separate dissent, one member recommended a one-year suspension.

Respondent Alexander D. Walter pled guilty to third-degree endangering the welfare of a child. He admitted during his plea colloquy that on multiple occasions, between December 1, 2010 and April 1, 2011, he masturbated in the presence of a nine-year-old girl, who moved into his home with her mother. He admitted that he masturbated in front of the girl for his own sexual pleasure while the two were alone in the family swimming pool. Following review of the matter submitted on motion for final discipline filed by the OAE, seven members of the DRB recommended Walter's disbarment. Two members dissented—one recommended an indeterminate suspension and one recommended a two-year suspension.

**HELD:** For respondents Legato and Kenyon, the Court imposes indeterminate suspensions from the practice of law, pursuant to Rule 1:20-15A(a)(2). The Court disbars respondent Walter, pursuant to Rule 1:20-15A(a)(1).

1. "The privilege to practice law is [dependent] on an attorney's ability to maintain a high moral character." In re Hasbrouck, 140 N.J. 162, 166 (1995). Under Rule 1:20-13(c)(1), a criminal conviction is evidence of guilt in a disciplinary proceeding and establishes a violation of Rule of Professional Conduct 8.4(b), prohibiting criminal conduct that "reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer." The criminal conduct need not "involve the practice of law or arise from a client relationship." In re Musto, 152 N.J. 165, 173 (1997). "[T]he primary purpose of discipline is not to punish the attorney but to preserve the confidence of the public in the bar." In re Cohen, 220 N.J. 7, 11 (2014). (pp. 7-8)

1

2. The Court has refrained from establishing a bright-line rule requiring disbarment in all cases involving sexual offenses against children. Rather, the appropriate level of discipline may depend on different factors, such as whether the case "involved touching, physical violence, or actual dissemination [of child pornography] to others, the number of pictures or videos, or whether the perpetrator suffered from mental illness or sexual abuse himself or herself." Cohen, supra, 220 N.J. at 18. Thus, the imposition of discipline in cases involving sexual misconduct with a minor requires a fact-sensitive inquiry on a case-by-case basis. (p. 9)

3. In Cohen, the Court addressed the disciplinary action appropriate for an attorney who pled guilty to second-degree endangering the welfare of a child, based on the attorney's possession of child pornography. Id. at 8. For the first time in a child pornography case, the Court imposed an indeterminate period of suspension on the attorney, specifically underscoring that he would be subject to "vigorous review" before being considered for readmission to the practice of law. Id. at 19. The Court found that the attorney's "alleged mental illness, his own experience being sexually abused as a child, and his cooperation in seeking treatment and his progress thus far" warranted some leniency and discipline less than full disbarment. Id. at 18. Although discipline for sexual offenses has occasionally been as mild as reprimand, the Court announced in Cohen that "attorneys must be on notice that engaging in this form of unlawful activity may be considered grounds for losing the privilege of membership in a distinguished and trusted profession." Id. at 18. The Court also put the bar on notice of the "more stringent approach [it] will take in disciplining attorneys for egregious offenses." Ibid. (pp. 9-13)

4. The conduct of Legato aligns with the conduct of the respondent in In re Ferraiolo, 170 N.J. 600 (2002). Just as in that instance, Legato engaged in illicit online conversations with an individual he believed to be a minor. The attorney's conduct in Ferraiolo, however, was more egregious because he appeared at the arranged meeting with the child; whereas here, Legato never showed to meet the child in person, despite making arrangements to do so. In the fifteen years since Ferraiolo, the Court has recognized changing societal attitudes toward child sexual offenders and has put the bar on strict notice of stringent discipline for such offenses. Although the Court found a one-year suspension to be appropriate in Ferraiolo, today, the Court finds that indeterminate suspension is appropriate for Legato. Like Legato, Kenyon engaged in illicit online conversations with an individual he believed to be a minor, but he never met in person. Thus, Kenyon's conduct similarly merits indeterminate suspension. (pp. 14-15)

5. The Court notes that the public will be protected while Legato and Kenyon are suspended and under parole supervision for at least fifteen years. They will not be able to access the Internet for non-work purposes, and their Internet usage will be monitored. With the protections of Megan's Law and parole supervision for life (PSL) in place, the Court stops short of eliminating all hope of future reinstatement. It is unlikely that Legato or Kenyon could successfully petition the Court for readmission while under PSL. The Court does not minimize the reprehensibility of Legato's and Kenyon's conduct simply because the minors were actually undercover agents. It does, however, find a significant distinction between online and personal physical contact. (pp. 15-17)

6. Finally, the Court addresses the disbarment of respondent Walter. The Court agrees with the DRB's assessment that Walter's characterization of the course of events demonstrates that he does not appear to take full responsibility for his actions, but rather attempts to apportion blame to a nine-year-old child. Unlike Legato and Kenyon, Walter was not shielded by distance or the artificiality of online interaction. Walter has demonstrated that he is willing to take advantage of his power for his own benefit, encapsulating the precise object that the Court is tasked with maintaining—public confidence in the bar. (pp. 17-19)

So Ordered.

**JUSTICE ALBIN, DISSENTING** as to respondents Legato (D-99-15) and Kenyon (D-100-15), expresses the view that the sexual exploitation or abuse of children—whether completed or, as in the Legato and Kenyon matters, attempted—is such an egregious violation of societal norms that no discipline short of disbarment will ensure public confidence in the bar or the judiciary's governance of the bar.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion. JUSTICE ALBIN filed a separate, dissenting opinion, except that he did not participate in the matter of respondent Walter (D-101-15; Sections I.C. and III.D).**

IN THE MATTER OF

MARK G. LEGATO,

An Attorney at Law

─────────────────────────────

IN THE MATTER OF

REGAN C. KENYON, JR.,

An Attorney at Law

─────────────────────────────

IN THE MATTER OF

ALEXANDER D. WALTER,

An Attorney at Law

Argued June 21, 2016 – Decided May 24, 2017

On Orders to show cause why respondents should not be disbarred or otherwise disciplined.

Isabel K. McGinty, Assistant Ethics Counsel, argued on behalf of the Office of Attorney Ethics in the Legato matter.

Hillary K. Horton, Deputy Ethics Counsel, argued on behalf of the Office of Attorney Ethics in the Kenyon and Walter matters.

Robyn M. Hill argued the cause for respondent Mark G. Legato.

Dominic J. Aprile argued the cause for respondent Regan C. Kenyon, Jr. (Bathgate Wegener & Wolf, attorneys).

Frederick J. Dennehy argued the cause for respondent Alexander D. Walter (Wilentz Goldman & Spitzer, attorneys; Risa M. Chalfin, on the brief).

JUSTICE TIMPONE delivered the opinion of the Court.

These consolidated matters involve attorneys, with no previous disciplinary history, who pled guilty to sex offenses in which their intended victims were children ranging in ages from nine to twelve. Respondents Mark G. Legato and Regan C. Kenyon, Jr., each pled guilty to third-degree attempted endangering the welfare of a child. Respondent Alexander D. Walter pled guilty to third-degree endangering the welfare of a child. Each respondent was sentenced to parole supervision for life (PSL), N.J.S.A. 2C:43-6.4, and subjected to the registration requirements of Megan's Law, N.J.S.A. 2C:7-1 to -11. Under Megan's Law, the respondents must, among other requirements, register their addresses, provide community notification, and submit to Internet registration. PSL subjects the respondents to supervision by the Division of Parole for at least fifteen years and to conditions such as counseling and limited Internet access and use.

Under Rule 1:20-13(c)(1), the respondents' convictions constitute conclusive evidence of their criminal conduct, as

2

well as a violation of Rule of Professional Conduct 8.4(b), which proscribes commission of "a criminal act that reflects adversely on lawyer's honesty, trustworthiness, or fitness as a lawyer." The only task before this Court is to determine the appropriate discipline for each respondent's ethical violations. The Office of Attorney Ethics (OAE) and the Disciplinary Review Board (DRB) recommended that the Court disbar each respondent.

We now sanction Legato and Kenyon to indeterminate suspensions from the practice of law, pursuant to Rule 1:20-15A(a)(2). We disbar Walter, pursuant to Rule 1:20-15A(a)(1).

## I.

### A.

Respondent Mark G. Legato was admitted to practice law in New Jersey in 1999. On June 27, 2013, Legato pled guilty to third-degree attempting to endanger the welfare of a child by attempting to engage in sexual conduct that would impair or debauch the morals of a child under the age of sixteen, in violation of N.J.S.A. 2C:5-1 and N.J.S.A. 2C:24-4(a).

Legato admitted that he engaged in explicit online conversations with a person he believed to be a twelve-year-old girl. During the conversations, Legato asked the girl to touch her genitals and told her that he would like to engage in oral sex and intercourse with her. Legato then began a video chat with her, during which he unzipped his pants and exposed his

3

erect penis. He also admitted to scheduling two in-person meetings with the girl, but did not appear at either. Unbeknownst to Legato, the girl was actually an undercover law enforcement officer. Those interactions led to his arrest and subsequent guilty plea.

Legato underwent a psychosexual evaluation and risk assessment. The evaluator opined during the sentencing hearing that Legato was "not a risk for any offending." The sentencing court found the need for specific deterrence and general deterrence, N.J.S.A. 2C:44-1(a)(9), as an aggravating factor. As mitigating factors, the court found that Legato's conduct did not cause or threaten serious harm, N.J.S.A. 2C:44-1(b)(1), that Legato had no prior criminal record, N.J.S.A. 2C:44-1(b)(7), that his character and attitude indicated that he was unlikely to commit another offense, N.J.S.A. 2C:44-1(b)(9), and that he was likely to respond affirmatively to probation, if available, N.J.S.A. 2C:44-1(b)(10).

The court sentenced Legato to a special sentence of parole supervision for life and required him to comply with Megan's Law. The court further ordered Legato to continue therapy with his psychologist, restricted his Internet and computer access solely to work-related needs, subjected him to periodic unannounced inspections, and required him to pay for the installation of an electronic monitoring system.

4

Following Legato's guilty plea, the OAE filed a motion for final discipline before the DRB. In a unanimous decision, the DRB voted for his disbarment.

B.

Respondent Kenyon was admitted to practice law in New Jersey in 2006. On June 27, 2013, Kenyon pled guilty to one count of third-degree attempted endangering the welfare of a child, contrary to N.J.S.A. 2C:5-1 and N.J.S.A. 2C:24-4(a).

Kenyon admitted that between February 16, 2011, and June 23, 2011, he engaged in online conversations with a person he believed to be a fourteen-year-old girl. He sent her images of, and links to, hardcore adult pornography and arranged to meet the girl, but did not appear for the meeting. Kenyon was unaware that he was in fact communicating with an undercover law enforcement officer. He was arrested and pled guilty to one count of attempted endangering the welfare of a child.

Kenyon maintains that his conduct was the result of his addiction to pornography, which began when he was thirteen years old, and that the exchanges with the girl were an "online escape" and a "fantasy." He began treatment for addiction six days after his arrest. The treating psychologist reported that Kenyon was making "excellent progress" by taking full responsibility for his behavior and that there were no clinical

5

indications that he had "any tangible or identifiable intent to harm his children or any children sexually or otherwise."

After accepting his guilty plea, the sentencing court found one aggravating factor:  the need to deter, N.J.S.A. 2C:44-1(a)(9).  It also found three mitigating factors:  no prior criminal activity, the conduct was based on circumstances unlikely to reoccur, and Kenyon's attitude indicated that he was unlikely to reoffend, N.J.S.A. 2C:44-1(b)(7), (8), (9).  He was sentenced to a suspended three-year term of incarceration, fines, and parole supervision for life, and was ordered to comply with Megan's Law reporting requirements.  He was also required to continue to seek psychological treatment and to attend Sexaholics Anonymous meetings.

In a majority decision, the DRB voted to disbar Kenyon.  Three members dissented, recommending instead an indeterminate suspension.  In a separate dissent, one member recommended a one-year suspension.

### C.

Respondent Walter was admitted to practice law in New Jersey in 2007.  On February 14, 2012, Walter pled guilty to third-degree endangering the welfare of a child, in violation of N.J.S.A. 2C:24-4(a).  He admitted during his plea colloquy that on multiple occasions, between December 1, 2010 and April 1, 2011, he masturbated in the presence of a nine-year-old girl,

6

who moved into his home with her mother.  He admitted that he masturbated in front of the girl for his own sexual pleasure while the two were alone in the family swimming pool.  Walter was arrested and pled guilty to one count of endangering the welfare of a child.

The sentencing court found two aggravating factors:  the risk of recidivism and the need for deterrence.  N.J.S.A. 2C:44-1(a)(3), (9).  It also found two mitigating factors:  no criminal history and extensive hardship to respondent or his dependents.  N.J.S.A. 2C:44-1(b)(7), (11).  The court sentenced Walter to parole supervision for life, required compliance with Megan's Law and Walter to continue psychological counseling.  The court prohibited him from having contact with the victim or her family.

Following review of the matter submitted on motion for final discipline filed by the OAE, seven members of the DRB recommended Walter's disbarment.  Two members dissented -- one recommended an indeterminate suspension and one recommended a two-year suspension.

## II.

"The privilege to practice law is [dependent] on an attorney's ability to maintain a high moral character."  In re Hasbrouck, 140 N.J. 162, 166 (1995).  Under Rule 1:20-13(c)(1), a criminal conviction is evidence of guilt in a disciplinary

7

proceeding and establishes a violation of Rule of Professional Conduct 8.4(b), prohibiting criminal conduct that "reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer." The criminal conduct need not "involve the practice of law or arise from a client relationship." In re Musto, 152 N.J. 165, 173 (1997). Rather, any offense that reveals ethical shortcomings requires discipline, Hasbrouck, supra 140 N.J. at 167, because "[t]o the public [a lawyer] is a lawyer whether he acts in a representative capacity or otherwise," In re Gavel, 22 N.J. 248, 265 (1956).

"[T]he primary purpose of discipline is not to punish the attorney but to preserve the confidence of the public in the bar." In re Cohen, 220 N.J. 7, 11 (2014). "The imposition of discipline in a particular case . . . is meant to foster continued faith in the legal profession as a whole." In re Torre, 223 N.J. 538, 549 (2015).

Our role is to impose the appropriate discipline on respondents for their ethical violations. R. 1:20-13(c); R. 1:20-16; Cohen, supra, 220 N.J. at 12. That determination is "driven by the gravity of the offense," Cohen, supra, 220 N.J. at 12, and requires consideration of the "nature and severity of the crime, whether the crime is related to the practice of law, and any mitigating factors such as respondent's reputation, his

8

prior trustworthy conduct, and general good conduct," In re Lunetta, 118 N.J. 443, 445-46 (1989).

"Disbarment is the most severe punishment, reserved for circumstances in which 'the misconduct of [the] attorney is so immoral, venal, corrupt or criminal as to destroy totally any vestige of confidence that the individual could ever again practice in conformity with the standards of the profession.'" Cohen, supra, 220 N.J. at 15 (alteration in original) (quoting In re Templeton, 99 N.J. 365, 376 (1985)). We have refrained from establishing a bright-line rule requiring disbarment in all cases involving sexual offenses against children. Id. at 9. Rather, we found that the appropriate level of discipline may depend on different factors, such as whether the case "involved touching, physical violence, or actual dissemination [of child pornography] to others, the number of pictures or videos, or whether the perpetrator suffered from mental illness or sexual abuse himself or herself." Id. at 18. Thus, the imposition of discipline in cases involving sexual misconduct with a minor requires a fact-sensitive inquiry on a case-by-case basis.

Recently, in Cohen, this Court addressed the disciplinary action appropriate for an attorney who pled guilty to second-degree endangering the welfare of a child, based on the attorney's possession of child pornography. Id. at 8. The attorney, a member of the State Assembly, was arrested after an

9

investigation revealed that he accessed adult and child pornography on his work and law firm computers and printed pornographic images of young victims. Id. at 9-10. Overall, the attorney accessed thirty-four images of child pornography online, and authorities recovered nineteen printed photos of girls under sixteen. Id. at 10.

In our analysis, we highlighted the range of disciplinary measures available, depending on the degree of seriousness of the attorney's involvement with child pornography. Id. at 12-15. For the first time in a child pornography case, the Court imposed an indeterminate period of suspension on the attorney, specifically underscoring that he would be subject to "vigorous review" before being considered for readmission to the practice of law. Id. at 19. The Court found that the attorney's "alleged mental illness, his own experience being sexually abused as a child, and his cooperation in seeking treatment and his progress thus far" warranted some leniency and discipline less than full disbarment. Id. at 18.

Lesser suspensions have also been applied in child endangerment cases. In discussing the following disciplinary cases, we glean the facts from the DRB opinions archived on the Rutgers Law School website, available at http://njlaw.rutgers.edu/collections/drb/.

10

This Court suspended an attorney for one year, when the attorney attempted to meet a minor after engaging in illicit online conversations. In re Ferraiolo, 170 N.J. 600 (2002). There, the attorney entered an Internet chat room to communicate with a person he believed to be a child. He discussed sexual acts that he wished to engage the minor in and sent the minor boy two nude photos respondent claimed were of himself. He then arranged a meeting with the boy, appeared at the location, and was subsequently arrested by an undercover officer, who had been posing as the minor. The attorney admitted that he frequented Internet chat rooms that introduced older men to younger boys and had previously arranged to meet a boy for the purpose of engaging in sexual acts, but had never actually met with the boy. The DRB highlighted the attorney's favorable prognosis provided by psychological reports, his unblemished legal career, and letters from friends and family attesting to his otherwise good character. The DRB recommended a one-year suspension, which this Court ordered. See also In re Ruddy, 130 N.J. 85, 86 (1992) (suspending respondent for two years after he sexually molested several pre-teenage boys).

In contrast, this Court found disbarment the appropriate disciplinary action for an attorney who engaged in illicit conversations in an Internet chat room with an individual he believed to be a twelve-year-old boy. In re Cunningham, 192

11

N.J. 219, 220 (2007). During the conversations, the attorney described the sex acts that he wished to perform with the boy and also invited the boy to meet in person in a secluded area, but he never finalized the arrangement. Under those facts, this Court found disbarment proper, despite the DRB's recommendation of a two-year suspension.

We also found disbarment proper for an attorney who inappropriately touched a girl's rectal area. In re Frye, 217 N.J. 438 (2014). Though the incident in Frye was isolated, this Court accounted for the attorney's failure to report the conviction to the ethics committee for several years and his failure to attend mandatory outpatient sexual offender therapy sessions as indicative of the attorney's inability to rehabilitate and his danger to the bar. See also In re Burak, 208 N.J. 484 (2012) (disbarring respondent who pled guilty to possession of child pornography); In re Thompson, 197 N.J. 464 (2009) (disbarring respondent convicted of sexual exploitation of a minor); In re Sosnowski, 197 N.J. 23, 23-24 (2008) (disbarring respondent for New Hampshire conviction of possession of child pornography); In re Wright, 152 N.J. 35, 35 (1997) (disbarring respondent for aggravated assault for digitally penetrating his minor daughter's vaginal area); In re Palmer, 147 N.J. 312, 313 (1997) (disbarring respondent for seven counts of third-degree aggravated criminal sexual contact

12

and one count of fourth-degree criminal sexual contact); In re "X", 120 N.J. 459, 464 (1990) (disbarring respondent for second-degree sexual assault of his three daughters).

Although discipline for sexual offenses has occasionally been as mild as reprimand, see, e.g., In re Pierce, 139 N.J. 533 (1995) (attorney convicted of lewdness for exposing his genitals to twelve-year-old girl), we recognized in Cohen that "[c]rimes involving the sexual exploitation of children have a devastating impact and create serious consequences for the victims." Id. at 12. We explicitly announced that, from the date of that decision, "attorneys must be on notice that engaging in this form of unlawful activity may be considered grounds for losing the privilege of membership in a distinguished and trusted profession." Id. at 18. We also put the bar on notice of the "more stringent approach we will take in disciplining attorneys for egregious offenses." Ibid. With those principles in mind, we turn to the particular circumstances of the three cases before us.

### III.

We have considered the circumstances underlying each respondent's guilty plea and the recommendations made by the DRB, and address each in turn.

### A.

13

We first confront the indeterminate suspension of Legato. In affixing an indeterminate suspension on Legato, we consider the nature of his actions and any mitigating factors. The conduct of Legato aligns with the conduct of the respondent in Ferraiolo. Just as in that instance, Legato engaged in illicit online conversations with an individual he believed to be a minor. The attorney's conduct in Ferraiolo, however, was more egregious because he appeared at the arranged meeting with the child; whereas here, Legato never showed to meet the child in person, despite making arrangements to do so.

In the fifteen years since Ferraiolo, we have recognized changing societal attitudes toward child sexual offenders and have put the bar on strict notice of stringent discipline for such offenses with our decision in Cohen, supra, 220 N.J. at 9, 12, 18. Although we found a one-year suspension to be appropriate in Ferraiolo, today, we find that indeterminate suspension is appropriate for Legato because he admitted to targeting an underage child online, but never took the additional step of meeting with the minor. Instead, the communication with the purported minor was limited to online interaction. While Cunningham paved a path for disbarment without physical interaction, we do not find the need for complete disbarment for Legato. We therefore find indeterminate suspension the appropriate discipline for Legato. We reiterate,

14

as we did when imposing an indeterminate suspension on the respondent in Cohen, that Legato will be subject to "vigorous review" before the Court considers restoration of his license.

B.

Similarly, Kenyon's conduct merits indeterminate suspension. Like Legato, Kenyon engaged in illicit online conversations with an individual he believed to be a minor, but he never met the child in person. Kenyon's psychiatric evaluation was also favorable.

While suspended, the stringent requirements of Megan's Law and PSL will protect the public with respect to Kenyon. As with respondent Legato, Kenyon will be subject to parole supervision, continuing psychological counseling, and limitations on his access to and usage of the Internet. Kenyon too will be subject to "vigorous review" before his license may be restored. We refrain from applying a bright-line disbarment and find indeterminate suspension the appropriate discipline.

C.

We note that the public is protected while Legato and Kenyon are suspended and under parole supervision for at least fifteen years. They will not be able to access the Internet for non-work purposes, and their Internet usage will be monitored. With the protections of Megan's Law and PSL in place, we stop short of eliminating all hope of future reinstatement. We

15

cannot anticipate what therapies, pharmaceuticals, or treatments may become available to help control or rehabilitate Legato or Kenyon.  It is unlikely that Legato or Kenyon could successfully petition the Court to grant them readmission while under PSL. As a practical matter, in this case, at this time, disbarment and indeterminate suspension are disciplinary differences without a distinction.  Only time will tell whether they become markedly different sanctions.

When we protect the public in this manner, we simultaneously protect the integrity of our profession and our obligation to decide each matter based on the facts of each case.  The dissent's focus on monetary-based ethics violations conflates two categories of lawyers -- those who are motivated by greed to betray their client's and the public's trust and defraud them, and those who may have an affliction unrelated to their practice of law and commit offenses based on that affliction, see, e.g., Fred S. Berlin, Pedophilia and DSM-5:  The Importance of Clearly Defining the Nature of a Pedophilic Disorder, 42 J. Am. Acad. of Psychiatry & L. 4, 404-07 (2014) http://jaapl.org/content/42/4/404 (discussing psychopathology of pedophilia); Michelle A. McManus et al., Paraphilias: Definition, Diagnosis  Treatment, Nat'l Ctr. for Biotech. Info., 5 F1000Prime Reports 36 (2013), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3769077/ (same);

16

Gilian Tenbergen et. al, The Neurobiology and Psychology of
Pedophilia: Recent Advances and Challenges, Frontiers in Human
Neuroscience (June 24, 2015),
http://doi.org/10.3389/fnhum.2015.00344 (same). The two
categories should not converge. Rather than draw another
bright-line rule that looks singularly at the egregiousness of
the act, we prefer to utilize the approach of examining the
individual circumstances before determining that the sanction of
disbarment is warranted for a sexually based offense. See
Cohen, supra, 220 N.J. at 9.

Regarding Legato and Kenyon, there was no actual harm or
contact to an actual minor, which would require disbarment. To
be clear, we do not minimize the reprehensibility of Legato's
and Kenyon's conduct simply because the children in the online
chat rooms were actually undercover agents. We do, however,
find a significant distinction between online and personal
physical contact.

D.

Finally, we address the disbarment of respondent Walter.
On multiple occasions throughout a five-month period, Walter
masturbated in the family pool in front of a nine-year-old girl
who was under his care. Strikingly, in describing the course of
events to his evaluating psychologist, Walter implied that while
in the pool the "physical barriers broke down, and the two

17

became too comfortable with each other physically." We agree with the DRB's assessment that this characterization demonstrates that Walter does not appear to take full responsibility for his actions, attempting to apportion blame to a nine-year-old child.

We further reject Walter's argument that his conduct is less culpable than that in Frye, simply because he did not actually fondle the child but instead masturbated in her presence for his own sexual gratification. Unlike Legato and Kenyon, Walter was not shielded by distance or the artificiality of online interaction. When "physical barriers broke down," Walter was not living an online fantasy -- he was masturbating in his pool in the presence of a young child in his charge.

We find that the nature and severity of his conduct, the physical presence of the child, and his position of power over and responsibility for the child brings Walter's actions into the realm of Frye and Wright. Walter has demonstrated that he is willing to take advantage of his power for his own benefit, encapsulating the precise object that we are tasked with maintaining -- public confidence in the bar. The lack of apparent remorse, lack of acceptance of responsibility and multiple instances of masturbating in the presence of a child who was under his care clearly warrant Walter's disbarment.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion. JUSTICE ALBIN filed a separate, dissenting opinion, except that he did not participate in the matter of respondent Walter (Sections I.C. and III.D).

IN THE MATTER OF

MARK G. LEGATO,

An Attorney at Law

_____

IN THE MATTER OF

REGAN C. KENYON, JR.,

An Attorney at Law

_____

IN THE MATTER OF

ALEXANDER D. WALTER,

An Attorney at Law

JUSTICE ALBIN, dissenting.

Some "ethical violations are, by their very nature, so patently offensive to the elementary standards of a lawyer's professional duty that they per se warrant disbarment." In re Cammarano, 219 N.J. 415, 421 (2014) (quoting In re Conway, 107 N.J. 168, 180 (1987)). The sexual exploitation or abuse of children -- whether completed or, as in the Legato and Kenyon matters, attempted -- is such an egregious violation of societal

1

norms that no discipline short of disbarment will ensure public confidence in the bar or the judiciary's governance of the bar.

In recommending the disbarment of attorneys Mark G. Legato and Regan C. Kenyon, Jr., for the crimes of attempting to endanger the welfare of children, the Disciplinary Review Board (DRB) recognized that the outrageous conduct of these attorneys justified the ultimate discipline. In making its recommendation, the DRB simply followed this Court's decision to disbar an attorney for similar conduct in In re Cunningham, 192 N.J. 219 (2007).

The public and the bar must have confidence that the Court means what it says. Because I believe that the majority has erred in not adopting the DRB's recommendation that the Court disbar Legato and Kenyon, I respectfully dissent.

I.

A.

In 2013, Legato pled guilty to third-degree attempting to endanger the welfare of a child by attempting to engage in sexual conduct that would impair or debauch the morals of the child, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:24-4(a), and was sentenced to a special sentence of supervision for life and ordered to comply with the dictates of Megan's Law. The facts set forth in Legato's plea colloquy and the DRB decision reveal that Legato engaged in explicit sexual conversations online with

2

a girl he believed to be twelve-years old. The "girl" was a law enforcement officer.

During the online chats, Legato disclosed that he was a forty-three-year-old male, and she stated that she was twelve-years old. During a video chat with the girl, Legato "unzipped his pants and exposed his erect penis." During their online conversations, Legato asked the girl "to touch herself in her genital area and [told] her that he would like to engage in oral sex with her as well as penetrate her." Although Legato twice scheduled in-person meetings with the girl, he did not appear on either occasion.

B.

In 2013, Kenyon pled guilty to third-degree attempting to endanger the welfare of a child by attempting to engage in sexual conduct that would impair or debauch the morals of the child, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:24-4(a), and was sentenced to a suspended three-year prison term and a special sentence of supervision for life as well as ordered to comply with the dictates of Megan's Law. The facts set forth in Kenyon's plea colloquy and the DRB decision reveal that Kenyon engaged in twenty-one sexually explicit online chats with a person whom he believed was a fourteen-year-old girl. Unbeknownst to Kenyon, the "girl" was a law enforcement officer.

During those online conversations, Kenyon "sent to her

3

images of, and links to, hardcore adult pornography."  In addition to sharing pornographic pictures with the girl, Kenyon "direct[ed] her to masturbate" and arranged to meet with her. Kenyon, however, did not appear at the scheduled rendezvous.

## II.

Just three years ago, we acknowledged that, "[t]oday, we are more acutely aware of the long-lasting pernicious effects of sexual crimes against children."  In re Cohen, 220 N.J. 7, 17 (2014).  We also observed that "[u]ntil now attorneys have not had clear notice of the more stringent approach we will take in disciplining attorneys for egregious [sexual] offenses."  Id. at 18.  Clearly, our society and our legal system have undergone a sea change in our understanding of the nature, extent, and effect of sexual exploitation and abuse of children.  Sexually abused children are irreparably harmed and permanently scarred. This profound reality must inform our judgment in determining the appropriate level of discipline for sexual-abuse offenses involving children -- and must guide us as we form new precedents.  Children are the most vulnerable members of our society and the most in need of special protection by our laws and by the legal profession.

The precedent most closely aligned with the case before us is Cunningham, supra, 192 N.J. 219.  There, we disbarred an attorney for misconduct strikingly similar to the transgressions

4

of the attorneys in this case. Ibid. Cunningham engaged in Internet chats with an undercover officer who was posing as a twelve-year-old boy. In re Cunningham, No. DRB 06-250 (Dec. 21, 2006) (slip op. at 2). In the online conversations, "[Cunningham] described, in lurid detail, certain sexual acts that he hoped to perform on the boy" and "sex acts that he hoped to teach the boy to perform on him." Id. at 2-3. Although Cunningham planned a sexual liaison with the boy, he never finalized the arrangement. Id. at 3.

Like the attorneys in this case, Cunningham pled guilty to third-degree attempted endangering the welfare of a child, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:24-4(a). Cunningham, supra, 192 N.J. at 220. Cunningham too received a special sentence of parole supervision for life and was required to register as a sex offender under Megan's Law. Cunningham, supra, No. DRB 06-250 (slip op. at 5).

In deciding that a two-year suspension was the appropriate discipline, the DRB noted, "as societal standards evolve, so does our attitude toward this sort of criminal behavior, and that predatory conduct directed at our young children requires more serious discipline." Id. at 8. This Court rejected the DRB's recommendation and determined that Cunningham's "unethical conduct requires that he be disbarred." Cunningham, supra, 192 N.J. at 220 (noting also that Cunningham failed to appear before

5

Court on Order to Show Cause).

The majority acknowledges, "Cunningham paved a path for disbarment" in similar sexual-abuse cases. Ante at ___ (slip op. at 14). Yet, the majority does not follow that path. There is no meaningful distinction that separates Cunningham, decided ten years ago, from Legato and Kenyon and no justification for different discipline, particularly given our heightened awareness of the serious and pervasive danger of sexual-abuse crimes against children.

## III.

We have recognized that certain species of egregious misconduct so impugn the integrity of the bar and the legal system that, even though the misconduct is unlikely to be repeated, "[n]o sanction short of disbarment will suffice to repair the damage" to the public's confidence in the bar. In re Hughes, 90 N.J. 32, 36-37 (1982). Even when an attorney's misconduct is unrelated to the practice of law, this Court will disbar attorneys for egregious offenses, as in In re Goldman, 224 N.J. 33 (2016) (robbery); Cammarano, supra, 219 N.J. 415 (public bribery); In re Hasbrouck, 152 N.J. 366 (1998) (burglary and theft); In re Valentin, 147 N.J. 499 (1997) (criminal sale of controlled substance); and In re Wright, 152 N.J. 35 (1997) (aggravated sexual assault).

Indeed, in such cases, we have declined to consider an

6

attorney's likelihood of rehabilitation as a factor in determining the appropriate sanction.  See, e.g., Cammarano, supra, 219 N.J. at 424; Hasbrouck, supra, 152 N.J. at 374-75. That was so in Hasbrouck, supra, a case involving home burglaries by an attorney.  152 N.J. at 370.  There the Court declined to consider Hasbrouck's drug addiction or the potential for her rehabilitation as mitigating factors.  Id. at 374-75. The Court disbarred Hasbrouck, noting that "[s]ome criminal conduct is so utterly incompatible with the standard of honesty and integrity that we require of attorneys that the most severe discipline is justified by the seriousness of the offense alone."  Id. at 371-72.

The Court came to the same result in Cammarano, supra, a case involving an attorney who, during a law-enforcement sting operation, accepted bribes to fund his election campaign for Mayor of Hoboken.  219 N.J. at 417-20.  There, the Court disbarred the attorney despite noting his "prior unsullied reputation, his service to the community, the adverse impact of his conviction on his personal and professional life, and his expression of remorse."  Id. at 424.  Although the Court "applaud[ed] the steps he ha[d] taken to right his life," it held that "the concerns raised by this case are greater than whether this [attorney] is capable of rehabilitation" and that our charge is to ensure "that the public will have confidence in

7

members of the bar." Ibid.

The Court has taken a similar position in cases involving attorneys who knowingly misappropriate client funds, regardless of the amount taken or whether the attorney made repayment before the theft was discovered. See generally In re Wilson, 81 N.J. 451 (1979). In requiring disbarment in such cases, the Court has expressed its understanding of the stressors that might prompt an attorney knowingly to invade a client's trust account -- financial desperation and family crises, id. at 457-60, mental illness, alcoholism, and drug addiction, see In re Greenberg, 155 N.J. 138, 161 (1997). In such cases, the Court has accepted "the very real possibility of reformation, which would result in the creation of a new person of true integrity, an outstanding member of the bar." Wilson, supra, 81 N.J. at 460.

Despite the potential for personal reformation and the severity of the discipline in such cases, we concluded that no result other than disbarment would satisfy the need for "continued confidence of the public in the integrity of the bar and the judiciary." Ibid. The maintenance of public confidence in the bar and our legal system has been the overarching goal of our disciplinary jurisprudence, even if the discipline in individual cases is seemingly harsh.

It is difficult to reconcile the majority's position that

8

those, such as Legato and Kenyon, who attempt to commit sexual crimes against children are worthy of reformation and rehabilitation but that those who are driven by desperation to invade a trust account or those who commit other crimes, e.g., burglary or sale of drugs, are not.  Was the bribe-taker in Cammarano less worthy of rehabilitation than Legato and Kenyon?

IV.

In Cohen, supra, a case involving an attorney who possessed and viewed child pornography on a state computer, we imposed an indeterminate suspension and put the bar on notice that such offenses in the future might result in disbarment.  220 N.J. at 9-10, 18.  There we said:  "[A]ttorneys must be on notice that engaging in this form of unlawful activity may be considered grounds for losing the privilege of membership in a distinguished and trusted profession."  Id. at 18.

The depraved actions of Kenyon and Legato exceeded the misconduct in Cohen because they engaged not only in explicit sexual conversations with individuals they believed to be young girls, but also coached them to engage in sexual acts.  Unlike Cohen, Kenyon and Legato directly attempted to debauch the morals of minors.  Although Kenyon and Legato were mistaken about the identity of the young girls, there is no mistaking their intent.  In disbarring Cammarano, it made no difference that the bribe the attorney took was from a government

9

informant.  Cammarano, supra, 219 N.J. at 423-24.  It should make no difference that Kenyon and Legato revealed themselves to undercover law enforcement officers rather than to real children.

Legato and Kenyon, moreover, are subject to parole supervision for life and cannot be released from that supervision for a period of fifteen years.  The Court nevertheless keeps open the possibility that they might be eligible for reinstatement even while they are under parole supervision.  The indeterminate suspension clearly is not the equivalent of disbarment, which is the reason I have parted from the majority.

To be clear, I do not question that Legato and Kenyon are capable of rehabilitating and redeeming themselves and becoming successful and productive members of society.  I hope that they accomplish those goals for their benefit and the benefit of their families and communities.  The practice of law, however, is a high calling and a privilege, not a right.  I believe that our jurisprudence calls for the permanent revocation of that privilege in these egregious cases to ensure the paramount goal of public confidence in the bar and the disciplinary process.

V.

Our decisions in disciplinary cases must not be idiosyncratic, but based on principles that consistently apply

10

to similarly situated attorneys.  Our precedents, moreover, should matter.  Attorneys must know that there are certain lines that can never be crossed if they intend to retain the privilege to practice law.  In my opinion, that line was crossed in these cases.

I therefore respectfully dissent.

**FILED**

**MAY 24 2017**

*[signature]* CLERK

IN THE MATTER OF                          :

MARK GERARD LEGATO,                       :

                                          :          ORDER

AN ATTORNEY AT LAW                        :

(Attorney No. 023781999)                  :

                                          :

It is ORDERED that pursuant to <u>Rule</u> 1:20-15A(a)(2), **MARK GERARD LEGATO** of **SOMERVILLE**, who was admitted to the bar of this State in 1999, is suspended from the practice of law for an indeterminate period, effective June 22, 2017, and until the further Order of the Court; and it is further

ORDERED that prior to reinstatement to practice, respondent shall submit to the Office of Attorney Ethics proof of his fitness to practice law as attested to by a mental health professional approved by the Office of Attorney Ethics; and it is further

ORDERED that respondent comply with <u>Rule</u> 1:20-20 dealing with suspended attorneys; and it is further

ORDERED that pursuant to <u>Rule</u> 1:20-20(c), respondent's failure to comply with the Affidavit of Compliance requirement of <u>Rule</u> 1:20-20(b)(15) may (1) preclude the Disciplinary Review Board from considering respondent's petition for reinstatement for a period of up to six months from the date respondent files proof of compliance; (2) be found to constitute a violation of

RPC 8.1(b) and RPC 8.4(d); and (3) provide a basis for an action for contempt pursuant to Rule 1:10-2; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in Rule 1:20-17.

WITNESS, the Honorable Stuart Rabner, Chief Justice, at Trenton, this 24th day of May, 2017.

CLERK OF THE SUPREME COURT

The foregoing is a true copy
of the original on file in my office.

CLERK OF THE SUPREME COURT
OF NEW JERSEY

IN THE MATTER OF       :

REGAN C. KENYON, JR.,    :

                    :        ORDER

AN ATTORNEY AT LAW

(Attorney No. 040762006)  :

                    :

**FILED**

MAY 24 2017

CLERK

It is ORDERED that pursuant to Rule 1:20-15A(a)(2), **REGAN C. KENYON, JR.**, formerly of **TITUSVILLE**, who was admitted to the bar of this State in 2006, is suspended from the practice of law for an indeterminate period, effective June 22, 2017, and until the further Order of the Court; and it is further

ORDERED that prior to reinstatement to practice, respondent shall submit to the Office of Attorney Ethics proof of his fitness to practice law as attested to by a mental health professional approved by the Office of Attorney Ethics; and it is further

ORDERED that respondent comply with Rule 1:20-20 dealing with suspended attorneys; and it is further

ORDERED that pursuant to Rule 1:20-20(c), respondent's failure to comply with the Affidavit of Compliance requirement of Rule 1:20-20(b)(15) may (1) preclude the Disciplinary Review Board from considering respondent's petition for reinstatement for a period of up to six months from the date respondent files proof of compliance; (2) be found to constitute a violation of

RPC 8.1(b) and RPC 8.4(d); and (3) provide a basis for an action for contempt pursuant to Rule 1:10-2; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in Rule 1:20-17.

WITNESS, the Honorable Stuart Rabner, Chief Justice, at Trenton, this 24th day of May, 2017.

CLERK OF THE SUPREME COURT

The foregoing is a true copy
of the original on file in my office.

CLERK OF THE SUPREME COURT
OF NEW JERSEY

FILED

MAY 24 2017

CLERK

IN THE MATTER OF            :

ALEXANDER D. WALTER,        :

                            :          ORDER

AN ATTORNEY AT LAW          :

(Attorney No. 000392007)    :

                            :

It is ORDERED that pursuant to Rule 1:20-15A(a)(1),

**ALEXANDER D. WALTER** of **TINTON FALLS**, who was admitted to the bar

of this State in 2007, be disbarred, effective immediately, and

that his name be stricken from the roll of attorneys; and it is

further

ORDERED that **ALEXANDER D. WALTER** be and hereby is

permanently restrained and enjoined from practicing law; and it

is further

ORDERED that respondent comply with Rule 1:20-20 dealing

with disbarred attorneys; and it is further

ORDERED that the entire record of this matter be made a

permanent part of respondent's file as an attorney at law of

this State; and it is further

ORDERED that all funds, if any, currently existing or

hereinafter deposited in any New Jersey financial institution

maintained by **ALEXANDER D. WALTER** pursuant to Rule 1:21-6 be

restrained from disbursement except on application to this

Court, for good cause shown, and shall be transferred by the

financial institution to the Clerk of the Superior Court, who is directed to deposit the funds in the Superior Court Trust Fund pending the further Order of this Court; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in Rule 1:20-17.

WITNESS, the Honorable Stuart Rabner, Chief Justice, at Trenton, this 24th day of May, 2017.

CLERK OF THE SUPREME COURT

The foregoing is a true copy
of the original on file in my office.

**CLERK OF THE SUPREME COURT
OF NEW JERSEY**